Good morning. May it please the Court, my name is Daniel Perez. I'm a member of the Court's Criminal Justice Act panel and I represent Mr. Pinhasoff. I want to confine my argument this morning to the procedural unreasonableness of this sentence, specifically in that the District Court imposed a sentence that was a variance of the guidelines. It went above the guidelines. And I want to begin by making a characterization of this case. This was an unremarkable garden variety fraud in almost every meaningful way. The amount of the loss, if you go by the restitution amount, was $2.3 million. And by the standards of the Southern District of New York, there is nothing remarkable about that. The number of victims was eight. This was a single defendant case with a single count indictment that was three pages long. The docket sheet is four pages long. The description of offense conduct in the PSR took all of two-thirds of a page. The guidelines calculations took half a page. Nothing was terribly remarkable about this fraud. And yet, the District Court, citing a buffet of reasons at the sentencing, imposed a sentence above the guidelines, which was unreasonable. If the Court will look at page 81 of the appendix, of the appellant's appendix, the District Court stated that there were two factors that the guidelines did not take into account. One was the number of diamonds that Mr. Pinhasoff defrauded the sellers of. Well, of course, the number of diamonds absolutely is taken into account by the guidelines, because you reach the loss amount by multiplying the number of diamonds by the value of the diamonds. That's how you get to $2.3 million. So the guidelines certainly take that into account. The other factor that the District Court pointed to in saying the guidelines don't take this into account was the duration of the fraud. Well, the duration of this fraud was all of two years. That's hardly unremarkable. Most of the time, they begin to the time that the defendant is apprehended. So there was nothing in particular that wasn't taken into account by the guidelines, which specifically say in the commentary to section 2B1.1, fraud encompasses a wide variety of conduct. And the specific offense characteristics are designed to take into account different circumstances in different kinds of fraud. What do you say about the finding that this is an industry that functions entirely on trust and that this conduct, this behavior, undermines an essential principle that allows this whole industry to function? That is a fair observation, and it was a fair observation by the District Court, and it was one of the characteristics of this fraud. But it's not in the guidelines, as far as I can see. But every fraud has some level of trust that is violated. If you look at the three cases that are cited by the government in its brief, the Willows case, for example, the Willows case, I believe, makes reference to elderly victims. Those are truly vulnerable victims. And again, there are ways of taking these things into account. And one of the other remarkable things about this fraud case was that there were no enhancements to the guidelines. It is frankly unusual for me to open a PSR and see a base level of 7, a level 16 for the loss amount, and then not a single enhancement for sophisticated means or for aggravated circumstances such as a particular level of economic harm on a victim. And the fact that there were no enhancements, again, should suggest to this Court, and it should have told the District Court, that this was, at the end of the day, and I don't mean any disrespect to the victims, but this was a mine run fraud. No different than really most other frauds that are prosecuted in this circuit. What was also remarkable about this sentencing was after the District Court finally did come down on that 48-month sentence, and there were pages and pages of transcript that preceded it, and the government pointed it out, rightly so, I would have done the same. There were certainly a lot of discussion before the sentence was imposed. But there was never a moment that the District Court said, here's why 48 is sufficient but not greater than necessary. But 41 would not be sufficient, because after all, there is a range that the guidelines gives in these cases, and the range here was 33 to 41 months. So if you want to take, Judge Jacobs, the fact that this industry relied on trust, or if you want to take the minor bail violations of missing his curfew by an hour or two, or testing positive . . . I don't know about the fact, which I believe is found, that some number of the victims were ruined. Their businesses collapsed. Well, again . . . As a result of this, I mean, you know, there are many businesses that can withstand a million dollar hit. But here, there were people who were ruined. Well, Your Honor, there was, as I stated before, that was not listed as a two-level enhancement. And so the guidelines do have the ability to take substantial economic harm into account. If it's one victim, it's a two-level enhancement. I think if it's five or more victims, it's a four-level enhancement. So whatever it was, we presume, this Court must presume . . . You're just talking about an accounting error. Well, this Court has to presume that the guidelines were properly calculated. And neither probation, nor the government, nor the district court said there should be an enhancement here because of the economic harm to these victims. And before I finish up, I would point the Court to right after that 48-month sentence was imposed. The Court actually said, I considered a sentence of seven and a half years for a first-time offender, for someone who stole some diamonds. And again, I'm not minimizing it. But seven and a half years, which translates to 90 months, puts us at about a 27 or a 28 in the guidelines. And it may be chilling, but it didn't happen. Well, I understand. But it provides some insight into the district court's mindset here, as did the fact that the Court immediately remanded Mr. Pinnasoff and said, not only am I remanding him, but I'm remanding him in part because I don't think he belongs in a camp, and said on the record and then wrote into the judgment and commitment order, he, with respect to the conditions of confinement, I find that a traditional prison setting is appropriate for this defendant. Again, there has to be something special. There has to be something extra. There has to be something unique or different to take it out of the guidelines. That's what the commentary says, and that's what the law requires. Is he incarcerated now? Yes, he is. Is he incarcerated in such a traditional? He sure is. He's at the FCI Fort Dix in a regular, medium-security prison. You've received rebuttal. I have. Thank you. We will hear you then. May it please the Court, my name is Russell Capone. I represent the government on appeal, and I represented the government in the proceedings below. The defendant defrauded roughly eight victims of more than $2 million over a period of two years by lying to them to get them to release him diamonds on consignment. That's how you usually commit a fraud. If you tell the truth, people will give you money or diamonds. That's correct, Your Honor. In this case, these victims were his friends. They were people whose businesses he devastated. In some cases, the businesses were forced to close. As Your Honor has indicated, he operated in a business where trust was critical, and he violated that trust repeatedly. When he was arrested and released on bail, he violated his bail four times, displaying, as the District Court found, a brazenness which was consistent with the brazenness of the crime. That was while the sentence was pending. Yes, Your Honor. For this conduct, he was sentenced to four years. That sentence, which is seven months above the guidelines, was not unreasonable. It was not shockingly high as the substantive unreasonableness case law requires. It was the result of a pretty detailed and thorough analysis and balancing of the 3553A factors by the District Court. It did not result from procedural error. There doesn't seem to be any allegation here of a traditional procedural error, such as an incorrect guidelines calculation or a failure to consider the 3553A factors. Judge Forrest clearly did all of that. Instead, the argument seems to be that it's procedural error in a case that is a typical fraud case to go above the guidelines. That is not found in the case law. With respect to the argument that Judge Forrest shouldn't have considered the value or the diamonds as a basis for varying, because those are already factored into in the guidelines or are sort of garden variety factors, she specifically found, as Judge Jacobs has indicated, that it wasn't just the number or value of the diamonds that was driving her reasoning here. It was also factors such as the number of victims, the real devastating impact on the victims in this case, the fact that the defendant was operating in an industry where trust was critical and abused it, and that he did so for a period of two years, which is not a short period of time in which to perpetrate a fraud. Those were the factors that she relied on in addition to his repeated bail violations. It's well within her discretion to weigh the sentencing factors, to consider mitigating circumstances as she did, to include the defendant's lack of criminal history and the impact that this would have on his family, but to decide that those factors were outweighed by the aggravating factors in this case. As the court is aware, the district court has wide latitude in sentencing the defendant so long as the sentence is within the range of permissible sentences, and in this case, a sentence that is seven months above the guideline, again, in light of the particularly deferential review on appeal, was not unreasonable, either procedurally . . . As you point out, there were violations of bail conditions while he was awaiting sentencing, but they do seem trivial. I mean, one is being forty minutes late for something, and another one is, you know, using marijuana. A third one seems to be that he went to the Diamond District without any finding that he conducted business there. I'm not even sure who would talk to him there, but that's another matter. Your Honor, it's not only the type of violations, it's the fact that there were four of them, in my experience. Four bail violations while one is awaiting sentence is excessive, it's significant, and the last one, in fact, was after Judge Forrest had issued an order putting the defendant on notice that she was considering immediate remand. Even after receiving that order, he violated again, and I think her concern . . . What was the term that he violated by going to the Diamond District? That was a condition of his bail, actually. That he should not go there? Yes. Not just for business. Obviously, it would have been worse if he's there for business, but it was the number, I think, of violations that for the court, again, suggested that this defendant who committed a brazen fraud multiple times was still not getting the message, and the message needed to be sent from a deterrent perspective, and that was among her bases. I mean, I don't think it was procedurally or substantively unreasonable. Unless the court has any further questions, the government will rest on its papers. Thank you. Are there a bunch of letters from victims filed with the court in this case? Yes. Yes, Your Honor. Does the government have copies of them? Yes, Your Honor. We were not able to find them in the record. I don't think they're on the record. I'd be happy to supplement the record with them. Please. Yes, Your Honor. If you could send it by letter to the clerk of court with a copy to your adversary. Absolutely. Thank you. I want to correct one issue, which is the condition of his bail prevented him from doing business in the Diamond District. Not from . . . That was my impression. But not presence. He was allowed to be present there, but not do business. Right. I mean, the Diamond District is a big place. It's the middle of Manhattan, right? So . . . I've been there. I just wanted to make sure I understood what it was. And you're telling me that it was he couldn't do business there, not that he couldn't go there for a . . . Correct. And the district court did specifically get that right during the sentencing hearing. There was a — I think the court was under the impression originally that he couldn't  And the . . . So that was not part of the reason that he was gotten over guidelines? It couldn't possibly be. That's what I'm asking. The reason — again, the reason that he got over the guidelines appears to be because the district court was under this impression that the guidelines don't take into account the number of diamonds, and the guidelines don't take into account the duration of a two-year fraud. With respect to the bail violations, look, if the bail violations are that severe, really they're not. I mean, we've all been doing this for a long time. We all know real bail violations versus routine, frankly, expected bail violations, and I'm not suggesting that he gets an award. But if he really is violating bail, the consequence is you revoke his bail. You don't add seven months to his sentence. With respect to the substantial financial hardship that the government is relying on and that the district court relied on, again, the government didn't ask for it. Probation didn't recommend it. The district court didn't find it. It's a two-level or a four-level enhancement in the guidelines that nobody sought. And what you're not supposed to do is to say, well, there's not enough here to add a two-level enhancement, but we're going to rely on the financial damage to go to impose a variance of the guidelines. And finally, with respect to the minor deviation, again, we're back to the issue of the difficulty of these minor variations above the guidelines. On the one hand, they're minor, so they seem somewhat inconsequential. But the flip side to that is, why is 41 not enough, but 48 is enough? And there was never a point that the district court explained that, and that was the court's requirement. That was the court's obligation. And the fact that it didn't do so renders the sentence procedurally unreasonable. Thank you. Thank you. We'll reserve decision.